**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| SOUTHWESTERN BELL TELEPHONE COMPANY, BELLSOUTH TELECOMMUNICATIONS, INC., ILLINOIS BELL TELEPHONE COMPANY, INDIANA BELL TELEPHONE COMPANY INC., MICHIGAN BELL TELEPHONE COMPANY, NEVADA BELL TELEPHONE COMPANY, PACIFIC BELL TELEPHONE COMPANY, THE OHIO BELL TELEPHONE COMPANY, THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY and WISCONSIN BELL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> IDT TELECOM, INC., ENTRIX TELECOM INC., and JOHN DOES 1-10, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 3-09-cv-01268-P<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION**
**FOR SUPPLEMENTAL BRIEFING**

Richard M. Parr
State Bar No. 15534250
AT&T Services, Inc. – Legal Department
175 E. Houston St., Fourth Floor
San Antonio, TX  78205
Telephone (210) 351-3503

Timothy A. Whitley
State Bar No. 00797660
Southwestern Bell Telephone Company
6500 West Loop South, Zone 5.5
Bellaire, Texas  77401
Telephone (713) 567-8114
Facsimile  (713) 567-4669

Theodore A. Livingston (*admitted pro hac vice*)
Demetrios G. Metropoulos (*admitted pro hac vice*)
Michael T. Sullivan (*admitted pro hac vice*)
Anne M. De Geest (*admitted pro hac vice*)
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone (312) 782-0600
Facsimile (312)  701-7711

*Attorneys for Plaintiffs*

Plaintiffs, the "AT&T Local Exchange Carriers" ("AT&T LECs") respectfully submit their brief in opposition to the motion for supplemental briefing brought by defendants IDT Telecom, Inc. and Entrix Telecom, Inc. (collectively, "IDT").

IDT's proposed supplemental briefing is just another attempt to distract the Court from what is really a simple case. Thus, to put IDT's motion in context the AT&T LECs remind the Court that the controlling points are undisputed:

1. IDT offers long-distance phone service through prepaid calling card arrangements.

2. Some of the long-distance calls by IDT's prepaid customers originate on the local networks of the AT&T LECs. Each AT&T LEC has tariffs under which it is entitled to collect "access charges" for calls that originate on its network.

3. In 2006, the Federal Communications Commission ("FCC") issued an order "requiring all prepaid calling card service providers to pay intrastate and interstate access charges." *In re Regulation of Prepaid Calling Card Services*, 21 FCC Rcd. 7290, ¶ 27 (2006) ("*Comprehensive Calling Card Order*"). The order contains no exception or limitation.

Yet to date, IDT has not paid the AT&T LECs for using their networks to carry prepaid long-distance calls. Instead, it has tried to evade the access charge tariffs (and thus get free rides on the AT&T LECs' networks) by making the calls *look* like they are local phone calls terminating at a local phone number served by one of the AT&T LECs' competitors. The ostensibly "local" number is really IDT's long-distance "platform," and the call goes from there to its real, long-distance destination.

So the AT&T LECs were forced to file suit. In an effort to put off the day of reckoning, IDT has filed a motion to stay or dismiss. IDT first said the Court should wait for the FCC to issue an order in a proceeding that is considering possible prospective reforms to the prices that carriers charge for using each others' networks – an effort that has dragged on for nearly a

decade. But the FCC has already decided the issue here, "requiring all prepaid calling card service providers to pay intrastate and interstate access charges," and even if the FCC happens to make prospective changes to the *price* for that access (as part of its review of all access charges) the forward-looking price change would be irrelevant to IDT's duty to pay *past* charges.

As a fallback, IDT asked the Court to dismiss the suit and let IDT off the hook entirely, arguing that it had not formally ordered long-distance access service from the AT&T LECs. (Of course not, because IDT tried to conceal its use of the AT&T LECs' networks.) But the FCC and the federal courts have held that a formal order is not necessary: one phone company *constructively* orders access service if it does not prevent its customers from using another phone company's network. See *United Artists Payphone Corp. v. New York Tel. Co.*, 8 FCC Rcd. 5563, ¶ 13 (1993); *Advamtel, LLC v. AT&T Corp.*, 118 F. Supp. 2d 680, 686 (E.D. Va. 2000).

Against this backdrop, IDT's latest motion seeks another bite at the briefing apple (and further delay) to discuss (i) a reconsideration order by a district court in South Dakota, (ii) an order by a district court in the District of Columbia, and (iii) a report written by the FCC staff. None of these items even discusses access charges on prepaid calling card services, and certainly none of them purports to overrule the FCC's order requiring all prepaid card providers like IDT to pay access charges. And as demonstrated below, none of these items warrants supplemental briefing; if anything they support the AT&T LECs.

### A. South Dakota Decision

IDT's first citation, *Alliance Communications Coop., Inc. v. Global Crossing Telecoms., Inc.*, 2010 WL 582365 (D.S.D. Feb. 11, 2010) simply denies reconsideration of a previous decision that was issued in September 2009. IDT did not cite the original decision in its October 2009 opening brief or its December 2009 reply. Why not? A review of the original decision –

2

which provides a full background of the case, as opposed to the truncated discussion in the reconsideration order – shows why the South Dakota case is inapposite.

The original decision was *Alliance Communications Coop., Inc. v. Global Crossing Telecoms., Inc.*, 663 F. Supp. 2d 807 (D.S.D. 2009). The entity that provided long-distance service to retail customers was "Express," but Express did not have its own long-distance network; instead, Express purchased wholesale long-distance service from a company called Onvoy. *Id*. at 814-15. Local phone companies delivered Express long-distance calls to Onvoy, and Onvoy took the calls to Minnesota, where a company called TNCI took over. *Id*. at 815-16. In turn, TNCI bought wholesale long-distance service from Sprint and Global Crossing, which carried the calls the rest of the way (handing them off to local companies for termination to their customers). *Id*. at 816. The local phone companies in South Dakota sued Onvoy, TNCI, Sprint and Global Crossing for access charges on Express calls. *Id*. at 818. All the defendants moved for summary judgment.

On the law, the South Dakota court acknowledged that "[t]he constructive ordering doctrine applies in this case" even though "none of defendants subscribed to plaintiffs' switched access services by submitting an Access Order as prescribed in the tariffs" (*id*. at 820 & n.11) – just as the AT&T LECs have shown here. Applying the constructive ordering doctrine to the particular facts of the case, the court then ruled in favor of TNCI, Sprint and Global Crossing. *Id*. at 825-33. At the same time, though, the court found that there were issues of fact that precluded summary judgment with respect to Onvoy, the first long-distance carrier in the chain. *Id*. at 823-25. In the reconsideration order that IDT would now like to cite here, the court reaffirmed its grant of summary judgment for TNCI, Sprint and Global Crossing.

The case here is very different. First, IDT's motion arises in an entirely different procedural posture. The South Dakota case was decided on summary judgment after the parties

3

had assembled a full evidentiary record (as is manifest from the court's lengthy discussion of the parties' complex inter-carrier relationships). Here, IDT's motion seeks to dismiss the complaint before any discovery occurs.

Second, based on the facts as they appear so far, IDT's situation here is very different from the complex situation presented in South Dakota. IDT is not some distant wholesaler like TNCI, Sprint, or Global Crossing. IDT is the company that provides long-distance service to retail customers, including customers who use IDT's prepaid calling services to make or originate calls from local phone lines served by the AT&T LECs. Further, in the South Dakota case, the calls in question were clearly labeled as long-distance calls, so the only question was which long-distance providers had to pay access charges to the local phone companies. Here, IDT has attempted to disguise long-distance calls as local so that the AT&T LECs would be deprived of access charges altogether.

Moreover, in the South Dakota case, the local phone companies that sued to collect access charges were located in South Dakota, and the calls in question began in South Dakota; the long-distance providers TNCI, Global Crossing and Sprint did not pick up the calls until Onvoy had carried them to Minnesota. Here, the calls originate in a local area served by an AT&T LEC and IDT picks up those calls in the same local area. In fact, the linchipin of IDT's scheme is to make its long-distance traffic *look* like it is local. IDT, in short, looks more like Express or Onvoy – companies that did *not* win on summary judgment in South Dakota – than TNCI, Global Crossing or Sprint.

B.    **District of Columbia Decision**

The AT&T LECs are surprised that IDT would want to focus this Court's attention on *PAETEC Communications, Inc. v. CommPartners, LLC*, No. 08-cv-00397, mem. order (D.D.C. Feb. 18, 2010). As IDT notes (Supp. Br. at 4), the local phone company in *PAETEC* sought to

4

collect access charges for two types of calls: (i) Time Division Multiplexing ("TDM") calls – essentially, traditional phone calls and (ii) Voice over Internet Protocol ("VoIP") calls. In IDT's own words, the defendant in *PAETEC* "conced[ed] that it owed PAETEC access fees for calls using TDM." Supp. Br. at 4. The district court then decided that the defendant did not owe access charges on VoIP calls. But IDT does not even claim that any VoIP calls are at issue here, so that portion of the court's decision is irrelevant. Rather, in the case presented here, the calls at issue are TDM calls – the kind for which liability was conceded in *PAETEC*. So to the extent the Court considers *PAETEC*, it favors the AT&T LECs.

IDT asserts that *PAETEC* made a sweeping holding that no access charges may be assessed on any type of call that was not subject to such charges in 1996. Supp. Br. at 5. Whether or not the district court really went that far (the court was only considering one call type, VoIP), and whether or not such a holding would be correct (for the record, the AT&T LECs disagree with IDT's broad assertion), are irrelevant. The calls at issue here are good old-fashioned long-distance calls carried by TDM technology, which were subject to access charges long before 1996 and which *both parties in PAETEC agreed are properly subject to access charges now*.

More fundamentally, this Court cannot entertain IDT's far-reaching theory. The controlling law is the FCC's order "requiring all prepaid calling card service providers to pay intrastate and interstate access charges." *Comprehensive Calling Card Order*, ¶ 27. If IDT thinks that the FCC was wrong and that prepaid calling card services should be *immune* from access charges, it should have appealed the FCC's order. (No party challenged the FCC's substantive ruling on appeal; some parties argued about whether that ruling should be applied retrospectively, and the D.C. Circuit held that it should. *Qwest Services Corp. v. FCC*, 509 F.3d 531 (D.C. Cir. 2007).) The federal appellate court "has exclusive jurisdiction ... to determine the

5

validity of ... [the FCC's] final orders," 28 U.S.C. § 2342, and this Court cannot entertain IDT's collateral attack on the FCC's *Comprehensive Calling Card Order*.[1]

### C. FCC Broadband Report

IDT's last proposed submission is not even a decision; it is a set of recommendations regarding advanced broadband services prepared by FCC staff members in the Wireline Competition Bureau and submitted by the FCC to Congress. IDT claims that "the FCC announced that it will undertake a thorough reform of the intercarrier compensation regime" (Supp. Br. 5) but as the AT&T LECs showed in their response to IDT's motion to stay, the FCC has been saying that for the last decade with no concrete decisions. More importantly, the report does not even mention, much less purport to reconsider or overturn, the FCC's prior order "requiring all prepaid calling card service providers to pay intrastate and interstate access charges." *Comprehensive Calling Card Order*, ¶ 27. In fact, the report makes clear that the FCC is *not* planning to overturn *any* access charges for past calls (and will thus not affect this suit). Rather, the report recommends prospective reductions in rates, to be phased in gradually over several years with "[n]o flash cuts." IDT Supp. Br. App. 26. Even if these recommended reductions were adopted, the first stage would only address rates for *intrastate* calls, and thus not impact interstate and international calls (which comprise the bulk of the disputed calls at issue here), and it would only be implemented "over a period of two to four years." IDT Supp. Br. App. 31. If anything, then, the report cited by IDT shows that this suit to recover past access charges and enforce *today's* rules should proceed without delay.

---

[1] IDT also seeks supplemental briefing about the court's three-sentence dismissal of PAETEC's equitable claims. The Court should reject this argument. Here, the AT&T LECs' equitable claims would not "undermine the complex scheme Congress and the FCC have established" as the court thought in *PAETEC* (IDT Supp. Br. App. 21). Rather, the AT&T LECs seek to *enforce* the FCC's order requiring prepaid calling card service providers to pay access charges, and to prevent *IDT* from evading the FCC's order and undermining the federal scheme.

Moreover, one reason that the report cites for prospective rate reductions is that carriers have "masked" or "redirected" traffic to avoid paying the current rates – exactly as IDT has done here.  IDT Supp. Br. App. 25.  The report certainly does not countenance such schemes; in fact, it describes them as "fundamental problems."  *Id*.

## CONCLUSION

For the reasons set forth above, the AT&T LECs respectfully request that the Court deny Defendants' motion for supplemental briefing, and reiterate their request that the Court deny Defendants' motion for stay and their alternative motion to dismiss for failure to state a claim.

Dated:  April 12, 2010

Respectfully submitted,

PLAINTIFFS


By: s/ Demetrios G. Metropoulos


Richard M. Parr
State Bar No. 15534250
AT&T Services, Inc. – Legal Department
175 E. Houston St., Fourth Floor
San Antonio, TX  78205
Telephone (210) 351-3503

Timothy A. Whitley
State Bar No. 00797660
Southwestern Bell Telephone Company
6500 West Loop South, Zone 5.5
Bellaire, Texas  77401
Telephone (713) 567-8114
Facsimile  (713) 567-4669

Theodore A. Livingston (*admitted pro hac vice*)
Demetrios G. Metropoulos (*admitted pro hac vice*)
Michael T. Sullivan (*admitted pro hac vice*)
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone (312) 782-0600
Facsimile (312)  701-7711


*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

      The undersigned hereby certifies, on this 12th day of April, 2010, a true and correct copy of the foregoing was served upon lead counsel for Defendants via electronic means pursuant to Local Rule 5(b)(D).

                                                            s/ Demetrios G. Metropoulos
                                                             Demetrios G. Metropoulos